UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PAX BRADFORD                                                                          PLAINTIFF

v.                                                CIVIL ACTION NO. 3:16-CV-00373-CRS-DW

PROSOFT, LLC and
HUMANA, INC.                                                        DEFENDANTS

<u>Memorandum Opinion</u>

I.     <u>Introduction</u>

This matter is before the Court on the motion of Defendant Prosoft, LLC ("Prosoft") for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), ECF No. 22. Plaintiff Pax Bradford responded, ECF No. 24. Prosoft replied, ECF No. 27.

Defendant Humana, Inc. ("Humana") also moved for judgment on the pleadings under Rule 12(c), ECF No. 30. Bradford responded, ECF No. 33. Humana replied, ECF No. 34.

Because these motions involve the same facts and similar issues, the Court will address them in a single memorandum opinion and order. For the reasons explained below, the Court will grant in part and deny in part Prosoft's motion for judgment on the pleadings and will deny Humana's motion for judgment on the pleadings.

II.     <u>Background</u>

    A.     <u>Allegations in the Complaint</u>

Bradford asserts that he is a former employee of Prosoft and Humana. Compl. ¶ 7, ECF No. 1. During his employment with Prosoft and Humana, he worked as a studio production artist. *Id*. ¶ 8. He began his employment with Prosoft in January 2015 and, immediately thereafter, was "contracted for employment" with Humana. *Id*. ¶ 9. Humana is alleged to have had complete control of Bradford's job duties and responsibilities. *Id*. ¶ 10.

Bradford identifies as a transgender person. *Id*. ¶ 14. He is anatomically female but has identified as male throughout his life, including when he was employed at Humana. *Id*.

Bradford says that he began experiencing significant abdominal pain before April 2015. *See id*. ¶ 15. In April 2015, his physician informed him that he would need to undergo a complete hysterectomy to treat his dysmenorrhea and endometriosis, which Bradford asserts are serious health conditions. *Id*. After meeting with his physician, Bradford immediately informed his Humana supervisor that he needed to undergo a hysterectomy because of his endometriosis and severe abdominal pain. *Id*. ¶ 16. In doing so, he disclosed that he is a transgender person for the first time. *Id*. Bradford also requested two weeks of medical leave and requested to work from home while recovering from the surgery. *Id*. ¶ 17. The supervisor indicated to Bradford that he would speak to Humana's creative agency director about his requests for medical leave and to work from home following the hysterectomy surgery. *Id*. ¶ 18.

On about May 12, 2016, Bradford informed Prosoft and Humana that his hysterectomy surgery was scheduled for May 23, 2016. *Id*. ¶ 19. He requested that Humana's Human Resources Department provide him with paperwork regarding his rights to medical leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*. *Id*. ¶ 20. Bradford provided Humana's Human Resources Department with a physician's note that verified his scheduled hysterectomy surgery, and documentation of his requests for leave for his surgery and accommodations to work from home. *Id*. ¶¶ 20–21.

About two weeks before the scheduled hysterectomy surgery, Bradford allegedly met with Humana's creative agency director. *Id*. ¶ 22. Bradford asserts that he again requested medical leave for two weeks following his hysterectomy surgery and requested to work from home for an additional two to four weeks while he recovered from the surgery. *Id*. The creative

agency director informed Bradford that Humana would not accommodate his requests for medical leave and that he would be terminated for leaving for his scheduled surgery. *Id*. ¶ 23.

Humana then denied Bradford's request for FMLA leave. *Id*. ¶ 24. Bradford was scheduled to work through Friday, May 20, 2016 at Humana before his scheduled surgery on May 23, 2016. *Id*. ¶ 25. But on Thursday, May 19, 2016, a Prosoft payroll representative called Bradford and informed him that Humana's creative agency director had terminated his employment, effectively immediately. *Id*. ¶ 25. In contrast to its treatment of Bradford, Humana had apparently granted similar accommodations to other employees in Bradford's creative agency department, including allowing those individuals to work from home. *Id*. ¶ 26.

According to Bradford, Humana and Prosoft failed to accommodate his disability and then discharged him. *Id.* ¶ 27. They were aware of his being a transgender person and disability before discharging him. *Id*. ¶ 29. Prosoft and Humana also perceived and regarded him as having a disability before discharging him. *Id*. ¶ 30. They terminated him because of his transgender identity and/or because he did not conform to their sex- or gender-based preferences, expectations, or stereotypes. *Id*. ¶ 31.

Bradford filed suit against Humana and Prosoft in June 2016. *Id*. at 1. He alleges that Humana and Prosoft violated the FMLA by interfering with his right to take medical leave under the law (Count I). *Id*. ¶¶ 32–37. Bradford claims that the defendants also violated the FMLA by retaliating against him for applying for medical leave and accommodations (Count II). *Id*. ¶¶ 38–42. He also maintains that Humana and Prosoft violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. by terminating him on the basis of a disability and/or a "perceived disability" and/or "regarded as" disability (Count III), *id*. ¶¶ 43–45, and by failing to reasonably accommodate his alleged disability (Count IV), *id*. ¶¶ 46–49. Finally, Bradford

asserts that the defendants violated section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) by terminating him on the basis of his being a transgender person and/or because he did not conform to their gender-based expectations, preferences, or stereotypes and because of his sex (Count V). *Id*. ¶¶ 50–53. He seeks compensatory and actual damages, statutory remedies, liquidated damages, equitable relief, punitive damages, and statutory attorney fees, costs, and interests. *Id*. at 7–8.

### B. Procedural History

In July 2016, Humana filed an answer to the complaint. Humana Answer 1, ECF No. 8. Prosoft filed an answer the following month. Prosoft Answer 1, ECF No. 13. Prosoft and Humana now individually move for judgment on the pleadings. Prosoft Mot. J. Pleadings 1, ECF No. 22; Humana Mot. J. Pleadings 1, ECF No. 30.

### III. Standard of Review for Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Monroe Retail, Inc. v. RBS Citizens, N.A.,* 589 F.3d 274, 279 (6th Cir. 2009) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)); *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations omitted). Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). A complaint states a plausible claim for relief when the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept as true legal

conclusions or "threadbare recitals of the elements of a cause of action." *Id*. When resolving a motion to dismiss, however, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)).

IV. <u>Whether Prosoft's Motion for Judgment on the Pleadings Should Be Granted</u>

Prosoft argues that it is entitled to a judgment on the pleadings because the factual allegations in the complaint are insufficient to support the asserted claims. Prosoft Mem. Supp. J. Pleadings 3, ECF No. 22-1. Prosoft further explains that Bradford "has impermissibly conflated the Defendants' actions but ascribes none of the conduct to [it]." *Id*. at 4.

A. <u>Whether Prosoft's Motion for Judgment on the Pleadings Should Be Granted on Bradford's FMLA Claims</u>

Prosoft first addresses Bradford's claims arising under the FMLA. *Id*. at 4–6. Prosoft asserts that the Court should grant its motion for judgment on the pleadings on the FMLA claims because the complaint fails to allege facts that would demonstrate that Bradford was an eligible employee or that it was an employer, as defined by the statute. *Id*. at 5. Bradford argues in opposition that he has pleaded facts sufficient to show that he was an employee and that Prosoft was an employer under the FMLA. Resp. Opp. Prosoft's Mot. J. Pleadings 5, ECF No. 24.

As noted above, Bradford's FMLA claims arise under theories of interference and retaliation. *See* Compl. ¶¶ 32–42, ECF No. 1. To successfully assert a claim under either of these theories, a plaintiff must demonstrate that he is an eligible employee and that the defendant is an employer, as defined by the FMLA. *See* 29 U.S.C. § 2615(a) ("It shall be unlawful for any *employer* to interfere with, restrain or deny the exercise of or the attempt to exercise, any right provided under this title. . . . It shall be unlawful for any *employer* to discharge or in any other

5

manner discriminate against any individual for opposing any practice made unlawful by this title.") (emphasis added); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (listing elements of FMLA interference and retaliation claims).

The FMLA defines "eligible employee" as an employee who has been employed "for at least 12 months with the employer with respect to whom leave is requested" and "for at least 1,250 hours of service with such employer during the previous 12 month period." 28 U.S.C. § 2611(2)(A). The statute defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." *Id.* § 2611(4)(A).

In this case, Bradford alleges that, at the time of his termination he had been employed by Prosoft for at least twelve months. Compl. ¶ 33, ECF No. 12. He also claims that he "began his employment with Prosoft in approximately January 2015 and was contracted for employment with Humana immediately thereafter." *Id.* ¶ 9. He also alleges that Prosoft was an employer within the meaning of the FMLA. *Id.* ¶ 11. Taking all reasonable interferences in favor of Bradford, these allegations plausibly claim that he was an eligible employee and that Prosoft was an employer within the meaning of the FMLA definitions. Prosoft's argument to the contrary is thus unavailing at this point in the litigation.

Prosoft alternatively maintains that the Court should grant its motion for judgment on the pleadings on Bradford's FMLA claims because the complaint fails to allege facts that would show that Bradford notified it of his FMLA claim. Prosoft Mem. Supp. J. Pleadings 6, ECF No. 22-1. Bradford argues, however, that the complaint alleges sufficient facts that demonstrate that he notified Prosoft of his FMLA claims. Resp. Opp. Prosoft's Mot. J. Pleadings 5, ECF No. 24.

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. Jh Props.*, 149 F.3d 517, 523 (6th Cir. 1998) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir. 1995)). The employee, however, does not need to mention the FMLA by name. *Id*. Rather, the employee must impart sufficient information to the employer to "reasonably apprise it of the employee's request to take time off for a serious health condition." *Id*. (internal citations omitted).

Here, Bradford alleges that he informed Prosoft that his hysterectomy surgery was scheduled for May 23, 2016. Compl. ¶ 19, ECF No. 12. This allegation may plausibly suggest that Bradford provided Prosoft with sufficient information to apprise it of his request to take time off for a serious health condition. As such, Prosoft's argument that its motion for judgment on the pleadings should be granted on Bradford's FMLA claims because the complaint lacks facts showing that it was notified of his leave request fails at this time.

  B. <u>Whether Prosoft's Motion for Judgment on the Pleadings Should Be Granted on Bradford's ADA and Title VII Claims</u>

Prosoft secondly addresses Bradford's ADA and Title VII claims. Prosoft Mem. Supp. J. Pleadings 7–10, ECF No. 22-1. Prosoft argues that its motion for judgment on the pleadings should be granted on these claims because the complaint fails to (1) assert that Prosoft was Bradford's joint employer, (2) provide facts sufficient to state viable ADA claims, or (3) allege that Bradford exhausted his available administrative remedies, which is a necessary prerequisite for filing an ADA or Title VII claim. *Id*.

> *i. Whether judgment on the pleadings should be granted because the complaint fails to assert that Prosoft was Bradford's joint employer*

Prosoft contends that the Court should grant its motion for judgment on the pleadings on Bradford's ADA and Title VII claims because the complaint fails to allege adequate facts that

would demonstrate that it was Bradford's employer, as defined by the statutes. Prosoft Mem. Supp. J. Pleadings 7, ECF No. 22-1. Prosoft, appearing to reference the joint employer theory of liability, argues that Bradford sufficiently alleges only that Humana was his employer. *Id*. Bradford contends in opposition that he has pleaded sufficient facts to plausibly show he had an employment relationship with both Prosoft and Humana. Resp. Opp. Prosoft's Mot. J. Pleadings 6, ECF No. 24.

To hold Prosoft liable under the ADA and Title VII, Bradford must show that Prosoft was his "employer" within the meaning of the statutes. *See Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 992 (6th Cir. 1997) (explaining requirement in context of ADA claims); 42 U.S.C. § 2000e-2 (Title VII prohibits unlawful employment practices by an "employer"). A defendant who does not directly employ the plaintiff still may be considered an "employer" under the joint employer theory. *See Swallows*, 128 F.3d at 993 (explaining joint employer theory in context of the ADA); *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011) (applying joint employer theory in context of a Title VII claim). Under the "joint employer" approach, "courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." *Swallows*, 128 F.3d at 993 (citing *Carrier Corp. v. NLRB*, 768 F.2d 778, 782 (6th Cir. 1985)).

Here, Bradford alleges that he is a former employee of Prosoft and Humana and that Prosoft and Humana employed him as a studio production artist. Compl. ¶¶ 7–8, ECF No. 1. He also asserts that he began his employment with Prosoft in January 2015 and was immediately thereafter contracted for employment with Humana. *Id*. ¶ 9. He also asserts that a Prosoft payroll representative informed him about the termination of his employment with Humana. *Id*. ¶ 25.

These allegations may suggest that Prosoft had sufficient control over Bradford such that it acted as a joint employer with Humana. Therefore, the Court declines at this time to grant Prosoft judgment on the pleadings on Bradford's ADA and Title VII claims based on the argument that the complaint fails to show it was Bradford's employer.

> *ii. Whether judgment on the pleadings should be granted on Bradford's ADA claims because the complaint fails to state viable claims under the statute*

Prosoft argues that its motion for judgment on the pleadings should also be granted on Bradford's ADA claims. Prosoft Mem. Supp. J. Pleadings 7–10, ECF No. 22-1. Prosoft contends that the complaint does not allege the necessary elements of the ADA claims asserted by Bradford. *Id*. As previously noted, Bradford alleges that Prosoft violated the ADA under theories of discrimination and failure to accommodate. Compl. ¶¶ 43–49, ECF No. 1. To prevail on his discrimination claim, Bradford must sufficiently prove (1) he was disabled, as defined by the ADA, (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, (3) he suffered an adverse employment action, (4) the employer knew or had reason to know about his disability, and (5) a nondisabled person replaced him. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008). To prevail on his failure to accommodate claim, Bradford must sufficiently show that (1) he was disabled, as defined by the ADA, (2) he was qualified for the job, and (3) he was denied a reasonable accommodation for his disability or was subject to an adverse employment action made solely as a result of his disability. *See Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996).

Prosoft specifies that Bradford does not identify the claimed disability in the complaint. *Id*. at 8. Bradford, however, maintains that he has identified the disability at issue in the complaint. Resp. Opp. Prosoft's Mot. J. Pleadings 7, ECF No. 24. The complaint alleges that Bradford's dysmenorrhea and endometriosis, which required a hysterectomy, constituted a

9

disability under the ADA. Compl. ¶ 27, ECF No. 1. Thus, Prosoft's argument that the complaint does not identify the alleged disability is unavailing for judgment on the pleadings.

Prosoft also contends that the complaint fails to provide any facts that would show that Bradford notified it of his alleged disability. Prosoft Mem. Supp. J. Pleadings 10, ECF No. 22-1. Bradford maintains in opposition that the complaint alleges that he notified Prosoft of his disability. Resp. Opp. Prosoft's Mot. J. Pleadings 7, ECF No. 24. Typically, "[a]n employer has notice of the employee's disability when the employee tells the employer that he is disabled." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). The employee "need not use the word 'disabled,' but the employer must know enough information about the employee's condition to conclude that he is disabled." *Cady v. Remington Arms Co.*, No. 16-5035, 2016 U.S. App. LEXIS 21592, at *9–10 (6th Cir. 2016). Such information could include "a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions." *Id*.

In the complaint, Bradford alleges that he informed Prosoft that his hysterectomy surgery was scheduled for May 23, 2016 and that Prosoft was aware of his disability before discharging him. Compl. ¶ 19, ECF No. 1. Taking all reasonable inferences in favor of Bradford and accepting all factual allegations as true, these allegations plausibly suggest that Bradford notified Prosoft of his disability before the company allegedly subjected him to an adverse employment action. Accordingly, Prosoft's argument regarding Bradford's failure to allege that he notified it of his disability fails at this time.

Prosoft also argues that its motion for judgment on the pleadings should be granted on Bradford's ADA discrimination claim because Bradford cannot meet the "regarded as" definition of a person with a disability, given that his impairment was "transitory and minor." Prosoft Mem. Supp. J. Pleadings 8–9, ECF No. 22-1. Bradford contends that, based in the allegations in the

complaint, he has sufficiently established that he is disabled under this definition. Resp. Opp. Prosoft's Mot. J. Pleadings 7, ECF No. 24.

Section 12102(1) of the ADA defines "disability" as

(A) "a physical or mental impairment that substantially limits one or more major life activities of such individual,"
(B) "a record of such an impairment," or
(C) "being regarded as having such an impairment."

42 U.S.C. § 12102(1). Bradford's ADA disability discrimination claim rests on the definition of disability found in § 12102(1)(C). The § 12102(1)(C) definition of a person with a disability does not apply when the impairment that is "transitory and minor," defined as "an impairment with an actual or expected duration of 6 months or less." *Id*. § 12102(3)(B).

The complaint alleges that Bradford's dysmenorrhea and endometriosis—which required a complete hysterectomy—constituted a disability under the ADA. Compl. ¶ 27, ECF No. 1. The complaint also alleges that he had been suffering from endometriosis and dysmenorrhea since at least April 2015, when his physician notified him of his diagnosis. Compl. ¶ 15, ECF No. 1. Taking all factual allegations as true, the duration of the impairments was greater than six months. Thus, Prosoft's argument that Bradford is not disabled under the definition of disability found in § 12102(1)(C) because he suffered from a transitory and minor disability is unavailing at this stage in the litigation.

> *iii. Whether judgment on the pleadings should be granted because the complaint fails to allege that Bradford exhausted his available administrative remedies*

Prosoft finally maintains that the Court should grant its motion for judgment on the pleadings on Bradford's ADA and Title VII claims because the complaint does not assert that Bradford exhausted "all of the administrative remedies available to him prior to initiating the action." Prosoft Mem. Supp. J. Pleadings 10, ECF No. 22-1. Bradford asserts that Prosoft is

aware that he filed an EEOC charge in June 2016 and that he requested his "right to sue" letter 180 days after filing his charge. Resp. Opp. Prosoft's Mot. J. Pleadings 8, ECF No. 24.

"The exhaustion of administrative remedies is a condition precedent to a Title VII or ADA action." *Williams v. Northwest Airlines*, 53 F. App'x 350, 351 (6th Cir. 2002); *see also Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 470 (6th Cir. 2008). The exhaustion requirement is intended to "trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Scott*, 275 F. App'x at 471 (citing *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)).

Bradford has not alleged that he exhausted his administrative requirements, and there is nothing in the record to support his argument that he filed an EEOC charge against Prosoft. Therefore, the Court will grant judgment on the pleadings on his ADA and Title VII claims to the extent that they are asserted against Prosoft and will dismiss these claims without prejudice.

V.  Whether Humana's Motion for Judgment on the Pleadings Should Be Granted

Humana argues the Court should grant its motion for judgment on the pleadings on all claims alleged against it because Bradford has failed to allege that it was his employer.[12] Humana Mem. Supp. J. Pleadings 3–6, ECF No. 31-1. Bradford, however, argues that he has alleged sufficient facts to show that Humana and Prosoft acted as joint employers and thus

---

[1] Humana urges the Court to consider Bradford's EEOC charge in considering whether it acted as an employer. Humana Reply 2, ECF No. 34. Humana asserts that the charge states that Prosoft was Bradford's employer. *Id*. Even if the Court would consider the charge in deciding whether Humana acted as an employer, the Court notes that the charge lists both Humana and Prosoft as Bradford's employer and thus is unpersuasive. Ex. 1 at 2, ECF No. 30-2.

[2] Humana includes the EEOC charge as an exhibit to its motion for judgment on the pleadings. *Id*. Humana does not argue that Bradford has failed to allege exhaustion of his administrative remedies. Thus, the Court declines to grant judgment on the pleadings on the claims to the extent that they are asserted against Humana based on Bradford's alleged failure to exhaust his administrative remedies.

12

Humana's motion for judgment on the pleadings should be denied. Resp. Opp. Prosoft's Mot. J. Pleadings 8, ECF No. 24.

The FMLA, the ADA, and Title VII place liability on employers. The FMLA provides that it is unlawful "for any *employer* to interfere with, restrain or deny the exercise of or the attempt to exercise, any right provided under this title" or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a) (emphasis added). Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, or privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "covered entity" as an "employer, employment agency, labor organization, or joint labor-management committee." *Id*. § 12112(a). Title VII prohibits "employer[s]" from engaging in "unlawful employment practice[s]," including "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id*. § 2000e-2(a)(1).

Courts have permitted FMLA claims, ADA claims, and Title VII claims to proceed against entities who did not directly employ the plaintiffs under the "joint employer" theory. *See, e.g., Grace v. USCAR*, 521 F.3d 655, 665 (6th Cir. 2008) (applying Department of Labor regulations regarding joint employers in context of FMLA claim); *Swallows*, 128 F.3d at 993 (explaining joint employer doctrine in context of ADA claims); *Sanford*, 449 F. App'x at 491 (applying joint employer theory in context of a Title VII claim). As explained above, under the joint employer theory, "courts consider whether one defendant has control over another

13

company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." *Swallows*, 128 F.3d at 993 (citing *Carrier Corp. v. NLRB*, 768 F.2d 778, 782 (6th Cir. 1985)).

In this case, Bradford has alleged that he was "contracted for employment" with Humana immediately after beginning his employment with Prosoft. Compl. ¶ 9, ECF No. 1. He also asserts that Humana had complete control over his job duties and responsibilities during the duration of his employment. *Id*. ¶ 10. Taking all reasonable inferences in favor of Bradford and accepting all factual allegations as true, the allegations plausibly suggest that Humana and Prosoft acted as joint employers. Therefore, Humana's argument that it cannot be held liable because it was not Bradford's employer lacks merit at this stage in the litigation.

In its reply, Humana argues that Bradford "admits that Prosoft was his employer." Humana Reply 2, ECF No. 34. Bradford alleges that Prosoft was his employer. Compl. ¶ 9. But such does not foreclose the possibility that Prosoft and Humana acted as joint employers. As such, the Court will deny Humana's motion for judgment on the pleadings.

IV.     Conclusion

The Court will grant in part and deny in part Prosoft's motion for judgment on the pleadings. The Court will grant its motion for judgment on the pleadings regarding Bradford's ADA and Title VII claims. The Court will thus dismiss the ADA and Title VII claims without prejudice to the extent that they are asserted against Prosoft. The Court will deny Prosoft's motion for judgment on the pleadings regarding Bradford's FMLA claims. The Court will deny Humana's motion for judgment on the pleadings. An order will be entered in accordance with this memorandum opinion.

April 24, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**